UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL JOHN OETZMAN,

      Plaintiff,                               Civil Action No.
                                                 13-CV-12831

vs.

                                                 Honorable Patrick J. Duggan

COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.
_____/

**OPINION AND ORDER (1) ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, (2) OVERRULING PLAINTIFF'S OBJECTIONS, (3) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, and (4) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

     This is a social security case. Plaintiff Daniel John Oetzman appeals from the final determination of the Commissioner of Social Security that he is not disabled and, therefore, not entitled to disability insurance benefits and supplemental security income. The matter was referred to Magistrate Judge David R. Grand for all pretrial proceedings. The parties filed cross-motions for summary judgment. On May 31, 2014, Magistrate Judge Grand issued a Report and Recommendation ("R&R"), recommending that Defendant's motion be granted and that Plaintiff's motion be denied. Plaintiff has filed objections to the R&R. The Court reviews *de novo* those portions of the R&R to which a specific objection has been made. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

     The background and procedural history of this case, along with the general legal framework applicable in social society appeals, have been adequately summarized by the Magistrate Judge and need not be repeated here. Plaintiff advances three objections to the R&R.

The Court addresses each, in turn.

**<u>OBJECTION ONE</u>**

In his first objection, Plaintiff argues that the Administrative Law Judge (ALJ) gave insufficient reasons for discounting a medical report dated November 3, 2011, which is co-signed by Dr. Greg Naylor, Plaintiff's internist, and Nurse Practitioner Warden, who works in Dr. Naylor's practice. The report, titled "Medical Source Statement Concerning Claimant's Ability to Engage in Work Related Activities," was completed by Nurse Warden but signed by both her and Dr. Naylor. The substance of the report was summarized by the Magistrate Judge in his R&R:

> Nurse Warden indicated that Oetzman suffered from degenerative disc disease at L5-L6 and L6-S1, a diffuse disc bulge at L5-L6, and sciatica to his left foot. She rated Oetzman's prognosis as "poor," but the only "clinical findings and objective signs" listed were status post-laminectomy in 1985. Nurse Warden further indicated that Oetzman's symptoms were so severe that he was "constantly (100%)" impaired in terms of remaining on task in a competitive work environment, and he had a "marked limitation (75%)" in his ability to deal with work stress. She said that he could not walk at all without rest or severe pain; needed a walker; could not sit or stand for any amount of time; needed to sit in a way that kept weight off his spine; and could sit and stand/walk for less than two hours in an eight-hour workday. Nurse Warden further indicated that Oetzman could lift ten pounds occasionally but was likely to be absent from work more than three times a month. She further opined that Oetzman was "currently unable to work."

R&R at 13 (Dkt. 16, Page ID 517) (record citations omitted).

The ALJ assigned "little weight" to this report, reasoning as follows:

> Ms. Warden, a nurse practitioner, provided the analysis and Dr. Naylor only signed it. Dr. Naylor last examined the claimant in November 2010. A nurse practitioner is not an acceptable medical source. Only "acceptable medical sources" can give medical opinions. Evidence from other sources can be used to show the severity of the claimant's impairments and how it affects the claimant's ability to function. As noted above the statement that the claimant is unable to work is an issue reserved to the Commissioner.

> Even so, Dr. Naylor and Ms. Warden's own treatment notes and physical findings fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact as limited as reported. The form indicates the claimant is unable to sit or stand for any amount of time yet their own physical findings indicate only posterior tenderness with full range of motion in the lumbar spine. They apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints.
>
> The possibility always exists that a treating source may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality, which should be mentioned, is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patients' requests and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case, and when patients are insistent they need surgery and narcotic pain medication, as in the current case.
>
> This opinion is without support from the other evidence of record, particularly from specialists such as the examining orthopedic surgeon, physiatrist, and physical medicine and rehabilitation specialist. The claimant's recommended treatment has not been consistent with what one would expect if the claimant were truly disabled. Dr. Naylor was unwilling to prescribe narcotics showing that he could not have believed the claimant's pain was as significant as reported in the form. Accordingly, the opinion of Dr. Naylor and Ms. Warden is given little weight.

ALJ Decision 10-11 (Dkt. 10-2, Page ID 48-49) (record citations omitted).

In his R&R, Magistrate Judge Grand thoroughly addressed Plaintiff's argument that the ALJ gave insufficient reasons for discounting the November 3 report, ultimately concluding that the ALJ's decision to accord the report "little weight" is supported by substantial evidence. *See* R&R at 14-17 (Page ID 518-521). In his first objection, Plaintiff argues first that the ALJ should not have discounted the report based on the fact that it was not completed by Dr. Naylor. Plaintiff argues that Dr. Naylor's signature on the report indicates his agreement with its contents regardless of who completed the report and that, therefore, the report should be given controlling weight in

3

accordance with the treating source rule.

The Court agrees with Plaintiff that Dr. Naylor's signature on the report indicates his agreement with it even if he did not personally complete the various questions on the report. However, the Court disagrees with Plaintiff that the ALJ discounted the report based on the fact that it was not authored by Dr. Naylor. As the Magistrate Judge noted in his R&R, the ALJ merely expressed concerns regarding how involved Dr. Naylor was in preparing the report, noting that, at the time the report was created, it had been a year since Dr. Naylor examined Plaintiff. The Court finds nothing impermissible about this observation, the accuracy of which Plaintiff does not dispute, given that the ALJ proceeded to give independently sufficient reasons why she ultimately accorded the report "little weight." In other words, the ALJ's decision to discount the report did not rest on Dr. Naylor's purported lack of involvement in authoring it. Notably, the ALJ used the transition "[e]ven so" to bridge her lack-of-authorship discussion with her discussion of the independently sufficient reasons why the report could not be assigned controlling weight. Use of the term "even so" strongly indicates that the ALJ's decision to discount the report was not dependent on Dr. Naylor's purported lack of involvement in creating it.

Plaintiff also takes issue with the two independently sufficient reasons given by the ALJ in support of her decision to discount the November 3 report. The first reason given is that the report is inconsistent with the treatment notes and physical findings of Dr. Naylor and Nurse Warden. The second reason given is that the November 3 report is inconsistent with the other record medical evidence. In his first objection, Plaintiff disputes both conclusions, rehashing the record medical evidence and arguing that the November 3 report is not inconsistent with the medical evidence of record.

However, the Court has thoroughly reviewed the medical evidence and agrees with the

Magistrate Judge that substantial evidence supports the ALJ's determination that the conclusions made in the November 3 report are not supported by the record medical evidence. Of particular significance, as discussed by the Magistrate Judge in his R&R and unmentioned by Plaintiff in his objection, is the disconnect between the conclusions made in the November 3 report, on the one hand, and the results of a physical examination of Plaintiff performed by Nurse Warden on the same day, on the other hand. Given the severe nature of the impairments noted throughout the November 3 report – including a determination that Plaintiff's prognosis was "poor," that he could walk zero city blocks and could not continuously sit or stand for any amount of time, and that Plaintiff was "currently unable to work" – one would expect contemporaneous treatment notes, test results, or medical findings indicating a severe, disabling impairment. Instead, as the Magistrate Judge discussed in his R&R, Nurse Warden's examination of Plaintiff conducted on November 3 was largely unremarkable, except that "posterior tenderness" in the spine and "back pain" were noted. As the Magistrate Judge determined, and this Court agrees, the ALJ reasonably concluded that the treatment notes and physical findings of Dr. Naylor and Nurse Warden "fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact as limited as reported." ALJ Decision at 10 (Page ID 48).

The Court also agrees with the Magistrate Judge that substantial evidence supports the ALJ's conclusion that the November 3 report is inconsistent with the other medical evidence contained in the record. *See* R&R at 15-17 (Page ID 519-521). While Plaintiff recites his relevant medical history in his objection, he fails to explain how or why any particular medical finding or treatment note undermines either the ALJ's determination that the November 3 report is inconsistent with the medical evidence as a whole or the Magistrate Judge's determination that the ALJ's conclusion is supported by substantial evidence. Moreover, the medical evidence

discussed by Plaintiff in his objection was acknowledged by the ALJ in her decision. Upon *de novo* review of the medical evidence in this case, the Court concludes that the evidence supports the ALJ's decision to assign "little weight" to the November 3 report.

The Court rejects Plaintiff's argument that the ALJ's analysis was faulty because she did not discuss all of the factors of the treating-source rule. Under the treating-source rule,

> [i]f the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence.

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citations omitted). While the ALJ did not explicitly discuss all of these factors in the section of her decision in which she concluded that the November 3 report of Dr. Naylor and Nurse Warden should be accorded "little weight," a factor-by-factor analysis is not required as long as the ALJ gives "good reasons" for the weight assigned to a treating-source's opinion. *Francis v. Comm'r Soc. Sec.*, 414 F. App'x 802, 805 (6th Cir. 2011). In discounting the November 3 report of Dr. Naylor and Nurse Warden, the ALJ focused on the degree to which their opinion was consistent with the record as a whole and supported by relevant evidence – two appropriate factors – while acknowledging the other factors elsewhere in her opinion. *See* ALJ Decision at 7, 9 (Page ID 45, 47) (noting that Plaintiff "established care with Dr. Greg Naylor, an internist, on February 2, 2010" and "continued medication management with Dr. Greg Naylor and Cynthia Warden, NP, every month or every two months for ongoing treatment of back pain that radiated to the left calf"). The ALJ complied with the treating-source rule.

For these reasons, the Court concludes that substantial evidence supports the ALJ's decision to accord "little weight" to the November 3 report of Dr. Naylor and Nurse Warden.

Accordingly, the Court overrules Plaintiff's first objection.

**OBJECTION TWO**

In his second objection, Plaintiff argues that the ALJ erred in discounting his credibility. Plaintiff begins by stating that the ALJ "misread or mis-remembered [Plaintiff's] testimony," Objection at 5 (Page ID 535), but fails to develop the argument. That is, Plaintiff does not describe how he believes the ALJ's interpretation of any portion of his testimony differs from his actual testimony.

Plaintiff's main argument is that the ALJ erred in failing to consider two items of evidence that Plaintiff believes bear favorably on his credibility – the affidavit of Plaintiff's sister, Suzanne Yarbrough, and evidence relating to Plaintiff's "good and long work record." The Magistrate Judge addressed these arguments in his R&R. With regard to the affidavit of Plaintiff's sister, the Magistrate Judge wrote:

> Oetzman also argues that the ALJ erred by ignoring the affidavit submitted by his sister, Suzanne Yarbrough, concerning his functional abilities. (Doc. #13 at 26-27 (citing Tr. 224-25)). Although Oetzman asserts that his sister's affidavit supports his "often seen pain and physical limitations" (*Id.* at 27), it does not necessarily demonstrate that he was more limited than found by the ALJ. Moreover, an ALJ need not mention every piece of evidence in the record in rendering his decision. *See Kornecky* [*v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006)] ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party").

R&R at 21 (Page ID 525). In addition to the Magistrate Judge's discussion of the issue, the Court notes that the ALJ did, in fact, discuss the contents of Ms. Yarbrough's affidavit. The ALJ wrote in her decision: "The claimant's sister reported he no longer drives or golfs. He uses a walker at times. The claimant stays in bed a lot due to pain. He has someone clean his house." ALJ Decision at 11 (Page ID 49). These are the observations contained in Ms. Yarbrough's affidavit and they are acknowledged in the ALJ's decision, contrary to Plaintiff's position otherwise. The

ALJ went on to give reasons for discounting the record testimony about Plaintiff's daily activities:

> Although the claimant has described daily activities that are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussion in his decision. Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.

*Id.* In light of the adequate coverage that the ALJ gave to Ms. Yarbrough's affidavit, the Court rejects Plaintiff's argument that the ALJ "did not even acknowledge" it. Objection at 6 (Dkt. 17, Page ID 536).

With regard to evidence of Plaintiff's "good and long work record," Plaintiff states in his objection that the ALJ "fail[ed] to consider how claimant's good and long work record supports his credibility." *Id.* The Magistrate Judge noted in his R&R that the ALJ did, in fact, consider Plaintiff's work record. R&R at 21 (Page ID 525). The Court agrees with the Magistrate Judge and concludes that the ALJ sufficiently considered Plaintiff's work history and gave good reasons supporting her credibility determination. Regarding Plaintiff's work history and credibility determination, the ALJ wrote in her decision:

> [Plaintiff] has a college degree in tool and die making. The claimant stopped working in the tool and die business due to the bad business practices of his employer. In October 2004, he got into real estate and began managing rental properties. He enjoys doing this but got to the point he could not do it anymore. He reported having two empty apartments and he let a friend move in even though she has no money. He has recently had to evict renters that could not pay and left the apartment a mess. The claimant noted it was his job to repair this. He said just showing up at the apartments is painful. It takes him four days to get an apartment together. He tries to help as much as he can. He testified that until this past week, he has not spent any time working on the apartments in the last four months. He will go collect rent from people if he can. The claimant currently has five apartments. He used to have fifty. He gradually got rid of them as he got worse physically.

> \* \* \* \*
>
> The claimant has provided conflicting information regarding his work and activities of daily living. He reportedly spends over twenty-three and a half hours a day in bed but he still manages five apartments. At the hearing he would not give a straight answer as to the amount of time he spends weekly in his landlord duties. He acknowledged it was his job to repair apartments. He hires people and tries to help as much as he can. He collects rent and evicts people if needed. Although inconsistent information provided by the claimant may not be the result of a conscious intent to mislead, nevertheless the inconsistencies suggest that the information provided by the claimant generally may not be entirely reliable.

ALJ Decision at 5, 12 (Page ID 43, 50). The Court has reviewed the hearing testimony and concludes that the ALJ recitation of the evidence and resulting credibility determination are adequately supported by the record.

For these reasons, the Court overrules Plaintiff's second objection.

**OBJECTION THREE**

In his third objection, Plaintiff argues that the ALJ erred in not considering the effects of Plaintiff's obesity on his impairments. However, the Magistrate Judge addressed this argument in his R&R and Plaintiff does not explain in his objection why he believes the Magistrate Judge's analysis is erroneous. In short, the Magistrate Judge concluded that the ALJ did not err in failing to discuss Plaintiff's purported obesity because Plaintiff submitted no evidence that he was diagnosed with obesity and did not put his purported obesity at issue in the proceedings below. In his objection, Plaintiff fails to respond to the Magistrate Judge's rationale for rejecting Plaintiff's argument that the ALJ erred in not considering the effects of Plaintiff's purported obesity. The Court overrules Plaintiff's third objection.

For the reasons discussed above, Plaintiff's objections to Magistrate Judge Grand's R&R are **OVERRULED**, the R&R is **ADOPTED** as the findings and conclusions of the Court, Plaintiff's motion for summary judgment is **DENIED**, and Defendant's motion for summary

judgment is **GRANTED**.

    **SO ORDERED**.


Dated: July 21, 2014                    <u>s/PATRICK J. DUGGAN</u>
                                        UNITED STATES DISTRICT JUDGE

Copies to:
Charles Robinson, Esq.
Russell Cohen, Esq.
Theresa Urbanic, A.U.S.A.

10